IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**United States for the Use and Benefit of**
**ALL INDIAN ENTERPRISES, INC.**,
**a Navajo Nation Corporation,**

      Plaintiff,

vs.                                                     No. CIV 99-604 LCS/WWD

**PC&M CONSTRUCTION CO.** ,
**a New Mexico Corporation, and**
**AMWEST SURETY INSURANCE CO.,**
**a California Corporation**,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court on Plaintiff's Motion for Summary Judgment *(Doc. 17)*, filed January 21, 2000. The Court has reviewed the motion, the memoranda submitted by the parties, and the relevant law. For the reasons stated in the following opinion, the Court finds that Plaintiff's Motion is well taken and will be granted.

**I. Background**

This case arises out a dispute between a government contractor and its subcontractor over the amount due on a subcontract. The subcontractor, Plaintiff All Indian Enterprises ("AIE"), submitted a bid of $70,286.65 to Defendant PC&M Construction Company ("PC&M") to perform certain construction work at the Fort Wingate Army Depot in New Mexico. Defendant Amwest Surety Insurance Co. is the surety for PC&M on the work at the Fort Wingate Army Depot. AIE's bid included installation of fencing and signs. AIE's bid broke down the estimate

into $37,358.40 apportioned for the sign work and the remainder apportioned for the fencing work. AIE also broke down the estimate into $34,455.51 for materials and $35,831.14 for labor.

PC&M informed Plaintiff that it wished to proceed with the fencing work, but not the sign work. Plaintiff prepared a written contract form for the fencing work on October 5, 1998. On the last page of the written contract form, above the signature lines, the contract price of $42,400.74 is clearly and unambiguously stated. PC&M's president, Pat Chee Miller, signed the October 5, 1998 contract form. Ronald Prows, president of AIE, also signed the same contract form.

The parties agree that AIE performed all of its obligations satisfactorily. AIE submitted periodic invoices to PC&M, and PC&M paid a total of $28,869.40 on those invoices. Sometime in early November 1998, when the project was approximately half completed, PC&M discovered that the amount shown on the written contract differed from the sum of the amounts apportioned for the fencing items on the original $70,286.65 bid. On or about November 13, 1998, PC&M submitted a two-part GSA form to the Government, as required under the prime contract, that confirmed award of the subcontract to AIE. AIE signed the second portion of that form, acknowledging incorporation of terms by reference. After AIE signed its portion, PC&M completed the prime contractor part of the form, stating that the dollar amount of the fencing subcontract was $32,928.25.

The parties do not dispute that AIE was required to provide an additional 170 feet of fencing beyond the contract requirements, and that the cost of this additional fencing was $358.45. The parties also do not dispute that the contract provided that the prevailing party in any action to enforce the provisions of the contract would be entitled to reasonable attorney fees

and costs.

## II. Analysis

This action is brought under the Miller Act, 40 U.S.C. §§ 270a - 270d. This court has jurisdiction over Plaintiff's claims under 40 U.S.C. § 270a (b). Pursuant to that section of the Miller Act, this suit is to be "brought in the name of the United States for the use of the person suing." Accordingly, the case caption shall be modified to conform to the statutory requirement.

Plaintiff has moved for summary judgment on the basis that it is entitled to judgment based on the undisputed facts of this case. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the non-moving/opposing party." *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996). However, the party opposing summary judgment must come forward with sufficient evidence upon which a reasonable jury could find a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the substantive law imposes a heightened evidentiary standard on the party opposing summary judgment, then it is appropriate for the Court to consider whether the evidence presented by the party opposing summary judgment could meet that heightened standard, when viewed in the light most favorable to that party. *See id.* at 254-55.

The parties stipulate that the laws of the United States and the State of New Mexico govern this action, notwithstanding contract language and other evidence that the laws of the Navajo Nation might be applicable in part. Under the Miller Act, federal substantive law controls over state law where there is a conflict between the two, but state law is incorporated to fill in the

interstices where federal law is silent. *See Burgess Constr. Co. v. M. Morrin & Son Co.*, 526 F.2d 108, 114 n.2 (10th Cir. 1975), *cert. denied*, 429 U.S. 866 (1976); *United States for the Use of Mobile Premix Concrete, Inc. v. Santa Fe Eng'rs, Inc.*, 515 F. Supp. 512, 515 (1981). The parties each cited New Mexico law on the issue of contract reformation, and have not identified any federal law that might conflict with New Mexico law on this issue. Therefore, the Court will look to New Mexico contract law to determine under what conditions Defendant may be entitled to reform the contract.

The parties agree that the written contract is unambiguous, that Plaintiff has performed its obligations under the contract, and that Plaintiff has not been paid the $42,400.74 stated in the written contract. Thus, at first blush, Plaintiff appears to be entitled to summary judgment. Defendants raise two arguments in opposition to summary judgment. First, Defendants claim that the written contract should be reformed to reflect the price that Pat Chee Miller believed he had agreed to during prior oral negotiations. Second, Defendants argue that AIE agreed to the "corrected" price of $32,928.25 when it signed the GSA form on November 13, 1998.

Under New Mexico law, a written contract "may be reformed if either (1) there has been mutual mistake, or (2) a mistake by one party accompanied by fraud or other inequitable conduct by the other party." *See Chromo Mountain Ranch Partnership v. Gonzalez*, 101 N.M. 298, 299, 681 P.2d 724, 725 (1984) (quoting *Kimberly, Inc. v. Hays*, 88 N.M. 140, 143-44, 537 P.2d 1402, 1405-06 (1975)). The party seeking reformation must support its contentions by clear and convincing evidence. *See Twin Forks Ranch, Inc. v. Brooks*, 125 N.M. 674, 677-78, 964 P.2d 838, 841-42 (Ct. App. 1998). Defendants present no evidence that Plaintiff was mistaken about the amount of the subcontract or even that there was a prior agreement that the subcontract

4

would be executed for $32,928.25. PCM's president can only come forward with his "assumption" that AIE's bid for the fencing alone, without the signs, would be in the thirty-two thousand dollar range because he mentally deducted the cost of the line item for signage from the total bid price. *See* Ex. C to Pl.'s Reply *(Doc. 19)* at 63-64. The evidence presented by Defendants, when viewed in the light most favorable to Defendants, can establish only a unilateral mistake by PCM as to the bid price.

To reform a contract under the "mistake . . . accompanied by fraud or other inequitable conduct" clause, Defendants must establish that AIE misrepresented "the contents or effect of a writing evidencing or embodying in whole or in part an agreement." *See Chromo Mountain Ransh Partnership*, 101 N.M. at 300, 681 P.2d at 726 (quoting RESTATEMENT (2D) CONTRACTS § 166 (1979)). Defendants present no evidence that the written instrument, with an unambiguous price of $42,400.74 prominently displayed on the same page as the signatures of the parties, misrepresented its contents. It is difficult to imagine how such a basic term as price could be misrepresented within a document when it is plainly stated. Furthermore, Defendants fail to come forward with substantial evidence that an agreement was reached to perform only part of the work in the original $70,286.65 bid for the value of $32,928,25. When Plaintiff was requested to delete the signage from its bid, Plaintiff was free to revise its bid for the remaining tasks accordingly. Therefore, by submitting the written instrument to PCM, Plaintiff prepared a new offer that was accepted when signed by Pat Chee Miller. I conclude that the evidence presented by Defendants cannot establish fraud or inequitable conduct even when viewed in the light most favorable to Defendants.

Defendants also fail to come forward with any substantial evidence that AIE agreed to

5

modify the contract price. The GSA form involves two distinct parts: part one, prepared and signed by the prime contractor, attests to the contract price. Part two, signed by the subcontractor, acknowledges incorporation of certain terms by reference. The undisputed evidence is that Ron Prows, president of AIE, signed its acknowledgment (Part II) before PCM completed Part I. Therefore, AIE did not agree, expressly or impliedly, to a modification of the contract price in this document. Furthermore, Defendants fail to present any substantial evidence of an oral modification to the contract price. Under New Mexico law, an oral modification to a written contract must be proven by clear and convincing evidence. *See A.D. Powers v. Miller*, 127 N.M. 496, 499-500, 984 P.2d 177, 180-81 (Ct. App. 1999). Defendants' evidence falls far short of this standard.

WHEREFORE, IT IS ORDERED that Plaintiff's Motion for Summary Judgment *(Doc. 17)* is **granted**. Summary judgment shall be entered for Plaintiff, and against Defendants jointly and severally, in the amount of $13,963.05. Plaintiff also shall be entitled to costs and reasonable attorney fees upon submission of an application in conformance with Local Rule D.N.M. LR-Civ. 54.

_____
**LESLIE C. SMITH**
**United States Magistrate Judge**

F:\Brian\Opinions\99-604 sj